ROBERT H. ROTSTEIN (SBN 72452)
 rxr@msk.com
ELAINE K. KIM (SBN 242066)
 ekk@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendant Debbie Allen
(erroneously sued as Debbie Allan)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ROBERT PANTON, | CASE NO. 2:17-cv-00050-JFW (JEM) |
| Plaintiff, | Honorable John F. Walter |
| v. | **DEFENDANT DEBBIE ALLEN'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (DKT. 21) OR, IN THE ALTERNATIVE, SECOND AMENDED COMPLAINT (DKT. 49-1), WITH PREJUDICE PURSUANT TO FRCP 12(b)(6);** |
| DANNY STRONG, DEBBIE ALLAN, LEE DANIELS, BRIAN CRAZER, PETER RICE, and FOX STUDIO, | |
| Defendants. | |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | **[[Proposed] Order; Request for Judicial Notice and Exhibits; Declaration of Elaine K. Kim; Declaration of Mary McGuire, and Notice of Manual Filing Filed Concurrently Herewith]** |
| | Date:       February 26, 2018 |
| | Time:       1:30 p.m. |
| | Ctrm:       7A, 350 W. 1st Street |

Mitchell
Silberberg &
Knupp LLP

9645627.6

1

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 26, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable John F. Walter in Courtroom 7A, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant Debbie Allen ("Allen") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing, with prejudice, Plaintiff Robert Panton's First Amended Complaint (Dkt. 21) or, in the alternative, Second Amended Complaint (Dkt. 49-1).

This Motion is made on the grounds that Plaintiff's claim for copyright infringement fails because:  (1) Plaintiff has failed to allege facts demonstrating that the creators of the television series *Empire* had access to his purported screenplay before creating *Empire*; and (2) Plaintiff's purported screenplay and *Empire*, as a matter of law, are not substantially similar in copyrightable expression. Furthermore, Plaintiff's additional claim in the proposed Second Amended Complaint for a declaratory judgment of credit as the co-creator of *Empire* fails because Plaintiff cannot state a claim for copyright infringement.  To the extent that Plaintiff is claiming that he is a co-author of *Empire*, such a claim also fails because Plaintiff has not alleged, and cannot allege, that he made an independently copyrightable contribution to *Empire*, that the parties had a shared intent to create a joint work, or that he exercised control over the creation of *Empire.*

This Motion is based upon this Notice of Motion; the attached Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice and exhibits hereto; the concurrently filed Declarations of Elaine K. Kim and Mary McGuire; all pleadings and other records on file in this action; and such further evidence and arguments as may be presented at or before any hearing on this Motion.

1    This case is exempted from Local Rule 7-3 pursuant to Local Rule 16-12,

2  because Plaintiff Robert Panton is "appearing pro se, is in custody, and is not an

3  attorney."  C.D. Cal. L.R. 16-12.

4
DATED:  January 24, 2018              MITCHELL SILBERBERG & KNUPP LLP
5

6
7                                       By:/s/ Elaine K. Kim
                                           Robert H. Rotstein
8                                          Elaine K. Kim
                                           Attorneys for Defendant Debbie Allen
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9645627.6

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ...................................................................1

II.   PLAINTIFF'S ALLEGATIONS AND THE WORKS AT ISSUE............2

   A.   *Empire* ........................................................................2

   B.   Plaintiff's Purported Screenplay, *Can You Cross Over*.......................8

III.   RULE 12(B)(6) STANDARDS IN COPYRIGHT CASES ......................11

IV.   PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS .......13

   A.   Plaintiff Has Failed To Plead Access...................................................13

   B.   *Empire* and *CYCO* Are Not Substantially Similar.............................14

V.   PLAINTIFF'S CLAIM IN THE SAC FOR DECLARATORY
   JUDGMENT OF CREDIT FAILS AS A MATTER OF LAW .............23

VI.   AMENDMENT WOULD BE FUTILE ........................................24

VII.   CONCLUSION ...................................................................25

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 2000) ..............................................................................23

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ..............................................................................13

*Astor-White v. Strong*,
  2016 WL 1254221 (C.D. Cal. Mar. 3, 2016),
  *appeal docketed*, No. 16-55565 (9th Cir. Apr. 19, 2016) ...............................2, 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................12

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010) ...........................................................15, 17, 18, 19

*Benjamin v. Walt Disney Co.*,
  2007 WL 1655783 (C.D. Cal. June 5, 2007) .......................................................18

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ...........................................................11, 14, 17

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2000) ........................................................13, 20

*Bisson-Dath v. Sony Comp. Entm't Am., Inc.*,
  694 F. Supp. 2d 1071 (N.D. Cal. 2010),
  *aff'd and adopted by*, 653 F.3d 898 (9th Cir. 2011)................................14, 17, 20

*Campbell v. The Walt Disney Co.*,
  718 F. Supp. 2d 1108 (N.D. Cal. 2010)....................................................12, 19, 25

*Capcom Co., Ltd, v. The MKR Group, Inc.*,
  2008 WL 4661479 (N.D. Cal. Oct. 10, 2008) .........................................12, 18, 19

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) ........................................................14, 15, 20, 21

*Christianson v. West Publ'g Co.*,
  149 F.2d 202 (9th Cir. 1945) ...............................................................................12

ii

NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Cox v. Reliance Standard Life Ins. Co.*,
   2014 WL 896985 (E.D. Cal. Mar. 6, 2014)...........................................................25

*DuckHole Inc. v. NBC Universal Media*,
   2013 WL 5797279 (C.D. Cal. Sept. 6, 2013).......................................................12

*Ford v. Ray*,
   130 F. Supp. 3d 1358 (W.D. Wash. 2015)...........................................................24

*Funky Films, Inc. v. Time Warner Entm't, Inc.*,
   462 F.3d 1072 (9th Cir. 2006)..........................................................14, 17, 18, 19

*Gable v. Nat'l Broad. Co.*,
   727 F. Supp. 2d 815 (C.D. Cal. 2010),
   *aff'd*, 438 Fed. Appx. 587 (9th Cir. 2011)...............................................11, 13, 21

*Gadh v. Spiegel*,
   2014 WL 1778950 (C.D. Cal. Apr. 2, 2014).......................................................12

*Harper & Row Publrs., Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) .........................................................................................14

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)...............................................................11

*Jarecki v. Ohoven*,
   2011 WL 13220745 (C.D. Cal. Aug. 18, 2011) .............................................23, 24

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ............................................................................14

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) ............................................................................13

*Merrill v. Paramount Pictures Corp.*,
   2005 WL 3955653 (C.D. Cal. Dec. 19, 2005)......................................................16

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
   586 F. Supp. 1346 (C.D. Cal. 1984)...................................................................13

*Newt v. Twentieth Century Fox Film Corp.*,
   2016 WL 4059691 (C.D. Cal. July 27, 2016),
   *appeal dismissed sub nom. Newt v. Daniels*,
   2017 WL 3923362 (9th Cir. Jan. 3, 2017)...........................2, 12, 15, 16, 19, 20, 21

iii

*Olson v. Nat'l Broad. Co.*,
    855 F.2d 1446 (9th Cir. 1988) ...................................................................... 17, 19

*Schkeiban v. Cameron*,
    2012 WL 5636281 (C.D. Cal. Oct. 4, 2012),
    *aff'd*, 566 Fed. Appx. 616 (9th Cir. 2014) .................................................... 12, 13

*Seigel v. Time Warner Inc.*,
    496 F. Supp. 2d 1111 (C.D. Cal. 2007) ................................................................ 24

*Shwarz v. United States*,
    234 F.3d 428 (9th Cir. 2000) ................................................................................ 11

*Tanksley v. Daniels*,
    259 F. Supp. 3d 271 (E.D. Pa. 2017),
    *appeal docketed*, No. 17-2023 (3d Cir. May 8, 2017) ..................... 2, 8, 17, 18, 21

*Taylor v. Universal Music Corp.*,
    2014 WL 12607685 (C.D. Cal. Mar. 10, 2014) .................................................. 24

*Thomas v. The Walt Disney Co.*,
    2008 WL 425647 (N.D. Cal. Feb. 14, 2008),
    *aff'd*, 337 Fed. Appx. 694 (9th Cir. 2009) ................................................ 12, 15, 25

*Van Horn v. Van Horn*,
    393 F. Supp. 2d 730 (N.D. Iowa 2005) ............................................................... 15

*Van v. Cameron*,
    566 Fed. Appx. 615 (9th Cir. 2014) .................................................................... 12

*Wild v. NBC Universal, Inc.*,
    513 Fed. Appx. 640 (9th Cir. 2013) .................................................................... 12

*Zella v. The E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) .......................................................... 12, 14

**FEDERAL STATUTES**

17 U.S.C. § 201(b) ..................................................................................................... 24

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 2, 24

9645627.6

## I.      INTRODUCTION

In this meritless action for copyright infringement, Plaintiff Robert Panton, currently incarcerated, alleges that the first season of the highly popular and critically acclaimed television series *Empire* infringes his alleged copyright in a screenplay titled *Can You Cross Over* ("*CYCO*").  Plaintiff alleges that he sent *CYCO* to another inmate, who purportedly fifteen years ago sent *CYCO* to Defendant Debbie Allen—a director of the final episode of *Empire*'s first season.

Plaintiff fails to state a claim upon which relief can be granted because he has pled neither that *Empire*'s creators—Lee Daniels and Danny Strong—had access to (*i.e.*, a reasonable opportunity to read) *CYCO* before they created *Empire*, nor that *CYCO* and *Empire* are substantially similar in copyrightable expression. Plaintiff's alleged similarities all consist of generic plot ideas and *scenes à faire*, which are not protected by copyright.  Plaintiff cannot claim a protectable copyright interest in the idea of an African-American couple making money from drugs and becoming involved in music.  *CYCO* and *Empire* differ drastically in plot, characters, setting, dialogue, mood, pace, sequence of events, and themes, and thus Plaintiff cannot satisfy the Ninth Circuit's "extrinsic test" for substantial similarity of expression.  The copyright infringement claim in Plaintiff's First Amended Complaint ("FAC") (Dkt. 21) or, in the alternative, the Second Amended Complaint ("SAC"), a proposed version of which was attached to Plaintiff's Request for Permission to Amend Complaint (Dkts. 49, 49-1), should therefore be dismissed with prejudice.[1]

---

[1] After Plaintiff filed the FAC, this Court granted Plaintiff's request for leave to amend and directed Plaintiff to file the SAC on or before December 21, 2017 (Dkt. 50).  The FAC and the proposed SAC both claim that Season One of *Empire* infringes his alleged copyright, which fails as to both access and substantial similarity.  The proposed SAC added a claim for declaratory judgment of credit. To date, Plaintiff has not filed the SAC, and therefore, the FAC is the operative complaint.  Nevertheless, because Allen was never served with the FAC (and was served only with the SAC), and because Plaintiff may attempt to file the SAC in response to this motion, Allen moves to dismiss the SAC in the alternative.  Allen

(…continued)

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Mitchell
Silberberg &
Knupp LLP

9645627.6

Plaintiff's claim in the proposed SAC for a declaratory judgment for credit as *Empire*'s co-creator likewise fails because *Empire* does not infringe *CYCO*.  To the extent that Plaintiff is claiming that he is a co-author of *Empire*, such a claim also fails because Plaintiff cannot allege that he made an independently copyrightable contribution to *Empire*, that the parties had a shared intent to create a joint work, or that he exercised control over the creation of *Empire*.

Plaintiff's operative complaint against Defendant Allen should be dismissed with prejudice in its entirety under Federal Rule of Civil Procedure 12(b)(6).

## II.   PLAINTIFF'S ALLEGATIONS AND THE WORKS AT ISSUE

### A.   *Empire*

Plaintiff claims that Season One of *Empire* infringes the copyright in a screenplay titled *Can You Cross Over* ("*CYCO*").[2]  FAC, ¶¶ 21-23; SAC, ¶¶ 41-43. A copy of *Empire*, Season One has been submitted to the Court as RJN Exhibit 1. Season One consists of twelve episodes, each lasting between 43 and 49 minutes. Lee Daniels and Danny Strong are the "Co-creators" of *Empire*.  FAC, ¶ 37; SAC, ¶ 57.  Allen is alleged to have been "a director" on *Empire* (*id.*); she directed the last episode of Season One (RJN Ex. 1, Ep. 12 (Who I Am), 51:14-16).

*Empire* is a soap opera-style family drama set in the modern-day world of hip hop.  *Empire* centers on the infra-family power struggle among Lucious Lyon, a famous rapper-turned-music mogul; his ex-wife Cookie, who has been in prison

---

(…continued)
reserves all rights and arguments regarding the untimeliness of the SAC and the claims therein, should Plaintiff attempt to file it.

[2] Plaintiff is among a number of individuals who have baselessly claimed that this hit television show somehow infringes the copyright in their works.  *See, e.g.*, *Tanksley v. Daniels,* 259 F. Supp. 3d 271 (E.D. Pa. 2017) (dismissing copyright infringement claim pursuant to Rule 12(b)(6) with prejudice), *appeal docketed*, No. 17-2023 (3d Cir. May 8, 2017), attached as Request for Judicial Notice ("RJN") Ex. 6; *Newt v. Twentieth Century Fox Film Corp.*, 2016 WL 4059691 (C.D. Cal. July 27, 2016) (same), *appeal dismissed sub nom. Newt v. Daniels*, 2017 WL 3923362 (9th Cir. Jan. 3, 2017), attached as RJN Ex. 7; *Astor-White v. Strong*, 2016 WL 1254221 (C.D. Cal. Mar. 3, 2016) (same), *appeal docketed*, No. 16-55565 (9th Cir. Apr. 19, 2016), attached as RJN Ex. 8.

Mitchell
Silberberg &
Knupp LLP

9645627.6

2

1  for seventeen years; and their three adult sons.  Lucious is the head of Empire

2  Entertainment, a huge music and entertainment company on the verge of going

3  public.  RJN Ex. 1, Ep. 1 (Pilot), 4:38-6:42.  Upon being diagnosed with ALS,

4  Lucious tells his sons that he will choose one of them to be his successor—Andre,

5  a married businessman with bipolar disorder; Jamal, a gay singer rejected by the

6  homophobic Lucious; and Hakeem, a talented but unfocused rapper.  *Id.*, Ep. 1

7  (Pilot), 2:46-4:37, 6:43-8:05, 9:06-9:47, 10:23-11:15, 22:10-23:15, 24:42-26:00,

8  30:11-32:41, 34:19-35:26, 39:20-34; Ep. 10 (Sins of the Father), 0:53-3:49.  This

9  epic family saga heats up when Lucious's ex-wife Cookie gets out of prison and

10 demands half of the company.  *Id.*, Ep. 1 (Pilot), 8:06-37, 14:04-17:19.

11      As the court in another copyright action involving *Empire* recently

12 summarized:

13          The pilot episode of *Empire* opens with Lucious Lyon, the

14      family patriarch, sitting in a recording studio dissatisfied with the

15      performance of one of his artists. (Empire DVD at 0:12–1:33.) As she

16      sings, the scene cuts to stylized flashbacks of Lucious being examined

17      by doctors who appear to be delivering bad news. (*Id.*) To get the

18      performance he wants, Lucious emotionally manipulates the artist,

19      telling her to recall the recent death of her brother. (*Id.* at 1:44–2:09.)

20      The performance that follows demonstrates how Lucious is both a

21      genius record producer and a man who is willing to stop at nothing to

22      get what he wants. (*Id.* at 2:09–2:44.)

23          The next scene opens with a lavish party on a yacht anchored in

24      New York harbor. (*Id.* at 2:55–4:30.) Lucious's sons Jamal and

25      Hakeem improvise an upbeat musical performance, while their older

26      brother Andre cynically looks down on them for showing off their

27      talent to gain their father's affection. (*Id.*)

28

The next scene cuts back to Manhattan where, greeted by a throng of paparazzi and fans, Lucious arrives at the skyscraper which is the headquarters of Empire Entertainment. (*Id*. at 4:40–4:55.) Lucious's faithful assistant Becky quickly meets him in the lobby and informs him of the days urgent matters before Lucious goes to a board meeting. (*Id*. at 4:55–5:31.) At the board meeting, he announces that Empire Entertainment has filed to become a publicly traded company. (*Id*. at 5:32–6:40.)

Later, Lucious meets with his three sons at his mansion and tells them that he plans to select one of them to take over Empire Entertainment, but that none of them are ready yet. (*Id*. at 6:46–8:05.) Jamal, the middle child, asks "what is this King Lear now?," suggesting the narrative for the series. (*Id*.)

The scene then cuts to prison gates opening and Cookie Lyon, the matriarch of the Lyon family, exiting the grounds. (*Id*. at 8:08–8:33.) The audience learns that Lucious's ex-wife Cookie was released after serving seventeen years in prison for charges associated with drug dealing.

At a boxing gym, Andre, the oldest son, tries to convince his father that he should take over the company. (*Id*. at 8:40–9:50.) Andre is a graduate of the Wharton School of Business and has helped his father with handling the finances of the company. (*Id*.) However, he is not musically talented like his two younger brothers. (*Id*.) Andre tells his father that Cookie was released from prison. (*Id*.) Hearing this news, Lucious asks Bunkie, his right hand man, to spy on her. (*Id*. at 9:52–10:22.) The audience later learns that Bunkie is in fact Cookie's cousin, and has been a long-time friend of the family. Bunkie asks

Lucious for $25,000 to cover his gambling debts, but Lucious refuses
to pay for his habit. (*Id.*)

The next scene opens to Jamal hanging out with his partner
Michael in his spacious loft. (*Id.* at 10:25–14:00.) Jamal tells Michael
about his father's succession challenge, but believes that he will never
be chosen because Lucious does not approve of his homosexuality and
does not think that an openly gay man can be successful in the world
of hip-hop music. (*Id.*) When the phone rings, Jamal answers and is
shocked to hear that his mother Cookie is outside and wants to be
buzzed in. (*Id.*) Through flashbacks, the audience learns that in stark
contrast to her ex-husband, Cookie knew that Jamal was gay and has
always supported him. (*Id.*)

The audience then follows Cookie to Empire Entertainment's
headquarters, where she drops by to visit with Lucious. (*Id.* at 14:00–
17:15.) In Lucious's opulent office, Cookie demands half of the
company, but Lucious says that this is not possible. (*Id.*) During their
argument, the audience learns that Lucious and Cookie were both
involved in drug dealing, and that Cookie pled guilty so that Lucious
could pursue his music career and take care of their children. (*Id.*)
Cookie feels that she is entitled to half of Empire Entertainment for
her sacrifice, in part relying on the fact that the money used to create
the company was the same drug money which landed her in prison.
Cookie then asks for an annual salary of $5 million and a position as
head of Artists & Repertoire ("A & R"). (*Id.*) Lucious says that he
will support Cookie financially, albeit not by giving her an annual
salary of $5 million, and that he cannot make her head of A & R
because the position is already filled (with his girlfriend, Anika). (*Id.*)

1   When Anika enters the office, Cookie casually insults her and warns

2   Lucious that he cannot sweep her under the rug. (*Id.*)

3       Cookie then visits the high rise apartment of Hakeem, her

4   youngest son. (*Id.* at 17:24–18:50.) Hakeem is disrespectful towards

5   her, so she brutally beats him with a broom. (*Id.*)

6       Later, Andre and his wife Rhonda discuss Lucious's succession

7   ploy in their apartment. (*Id.* at 24:44–26:00.) Rhonda suggests that

8   Andre pit his two younger brothers against one another, so that Andre

9   will be the last man standing to take over Empire Entertainment. (*Id.*)

10  As part of this strategy, Andre visits Cookie at her new apartment and

11  recommends that she manage Jamal's career and make him a star, as a

12  way to get leverage over Lucious. (*Id.* at 26:00–27:57.)

13      Cutting to a modern conference room at the company's

14  headquarters, Cookie interrupts Lucious's meeting to tell him that she

15  wants to manage Jamal. (*Id.* at 27:58–28:30.) She threatens Lucious

16  by telling him that she will leak to the Securities and Exchange

17  Commission the fact that Empire Entertainment was created with drug

18  money. (*Id.* at 28:33–29:56.) Lucious acquiesces. (*Id.*)

19      The pilot then cuts to performances by Jamal and Hakeem,

20  demonstrating their brotherly bond while also underscoring the

21  mounting tension between them. (*Id.* at 30:15–36:40.) First, Jamal

22  performs at a coffee shop. (*Id.*) Cookie tells him that he should share

23  his talents with the world and start making hit records, but he initially

24  refuses to let her manage his career. (*Id.*) Then, Hakeem has trouble

25  recording a song for Lucious in the studio. (*Id.*) Hungover from the

26  night before, he is unfocused and his performance suffers greatly. (*Id.*)

27  To get back in his father's good graces, he visits Jamal, who helps

28  him rework the song into a hit. (*Id.*)

Mitchell
Silberberg &
Knupp LLP

9645627.6

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1          Later, Bunkie materializes at Lucious's mansion and demands

2   $3 million. (*Id*. at 36:40–37:44.) He threatens Lucious by saying that

3   he will tell the police about murders Lucious committed many years

4   ago. (*Id*.) Despite this threat, Lucious still refuses to give Bunkie any

5   money. (*Id*.)

6          The following scene shows Hakeem back in the studio

7   performing the reworked song while Lucious and Jamal watch him

8   perform. (*Id*. at 37:48–36:40.) Lucious is impressed with Hakeem's

9   improvements. (*Id*.) Even though Hakeem tells his father that Jamal

10  helped him rework the song, Lucious refuses to recognize Jamal's

11  talents. (*Id*.) Frustrated by being constantly overlooked by his father

12  because of his homosexuality, Jamal finally agrees to let Cookie

13  manage his career. (*Id*. at 38:51–39:18.)

14         The following scene shows Lucious at the doctor's office. (*Id*.

15  at 39:19–40:50.) The doctor informs Lucious that he has Amyotrophic

16  Lateral Sclerosis (ALS), a progressive and fatal neurodegenerative

17  disease (also known as Lou Gehrig's disease). (*Id*.) The doctor tells

18  Lucious he has three years to live, thus informing the audience of

19  Lucious's rationale for the succession battle amongst his adult sons.

20  (*Id*.)

21         Later, Lucious meets with Bunkie under a highway overpass,

22  where Bunkie is seen urinating in the river. (*Id*. at 41:45–43:00.)

23  Because of Bunkie's attempts to blackmail Lucious, Luscious shoots

24  Bunkie as they stand face to face. (*Id*.)

25         In the final scene of the pilot episode, the entire family returns

26  to the lavish party on the yacht. (*Id*. at 45:05–45:55.) Lucious

27  announces Cookie's return to the company, and that Jamal and

28

Mitchell
Silberg &
Knupp LLP

9645627.6

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1  Hakeem will be releasing albums. (*Id*.) He closes with a toast "to the
2  Empire." (*Id*.)

3         In the remaining episodes of the first seasons of *Empire*,
4  Lucious reveals to his family that he has ALS, becomes engaged to
5  Anika, and continues to struggle with naming his successor. Cookie
6  continues to manage Jamal's career, and Jamal comes out publicly as
7  being gay. Andre has a manic episode and requires a brief period of
8  hospitalization, while Hakeem leaves and later returns to Empire
9  Entertainment. In the season's final episode, Lucious learns that he
10  does not have ALS after all, chooses Jamal as his successor, and is
11  arrested for Bunkie's murder.

12  *Tanksley*, 259 F. Supp. 3d at 284-86.

13       **B.     <u>Plaintiff's Purported Screenplay, *Can You Cross Over*</u>**

14       *CYCO* is "a 2hr. and 7 minute screenplay."  FAC, ¶ 22; SAC, ¶ 42.  Plaintiff
15  alleges that he alone wrote *CYCO* in 1993, but that it was submitted for copyright
16  in 1994 in his sister's name, Greta Clarke.  FAC ¶¶ 25-26; SAC, ¶¶ 45-46.  The
17  copyright registration for a 130-page screenplay titled *Can you cross over?*, No.
18  PAu002032153, shows the copyright claimant as "Greta Clarke (employer-for-hire
19  of Robert Parton)."  RJN Ex. 3.[3]  Plaintiff alleges that he obtained the exclusive
20  rights from his sister on July 19, 2015.  FAC, ¶ 27 & Ex. B; SAC, ¶ 47 & Ex. B.
21  The copyright deposit copy of *CYCO* has been submitted as Exhibit 2 to the RJN.

22       Plaintiff alleges that about fifteen years ago, in or about 2003, he sent a copy
23  of *CYCO* to one person—an inmate housed at a different prison named Guy Fisher,
24  "for him to send it to Debbie Allen for sale or production inquiries."  FAC, ¶ 28;
25  SAC, ¶ 48.  Plaintiff alleges that, at some unidentified time, Allen "started assisting

26  _____
27  [3] Exhibit A to the FAC and SAC refers to another registration, No.
   PAu001923459.  However, that number is obviously incorrect because, as the
   registration shows (RJN Ex. 4), that number pertains to a 9-page treatment, and not
28  the "2hr. and 7 minute screenplay" (FAC, ¶ 22) that Plaintiff claims was infringed.

1  [Fisher] with a 'Creative Writing' program . . . ."  FAC, ¶ 29; SAC, ¶ 49.  Plaintiff

2  claims that, after he was later transferred to the prison in which Fisher was

3  incarcerated, Fisher told him that "Allen received the screenplay CYCO, read it

4  and suggested a few things from the script may need changing."  FAC, ¶¶ 33-34;

5  SAC, ¶¶ 53-54.

6       *CYCO*, which has a feature-length film format, tells the story of a man in his

7  twenties named Donneekie (a/k/a "the Don") Brown and his life of crime.  The

8  story opens with Donneekie robbing a supermarket and brutally hitting the

9  manager with his gun.  RJN Ex. 2, pp. 2-5.[4]  Ignoring his mother's advice that it is

10 better to get what he wants legitimately, Donneekie sets up a business dealing

11 crack cocaine.  *Id.*, pp. 8, 12-13.  He starts working with another dealer named

12 Kenroy, and stakes out his territory by intimidating the other dealers.  *Id.*, pp. 13-

13 17.  One day, Kenroy goes to his supplier's apartment; federal agents raid the

14 apartment, and Kenroy is sent to prison for a year.  *Id.*, pp. 19-22, 25-26.

15      Donneekie meets Teresa, a "[a] gorgeous, brown-skinned prostitute."  RJN

16 Ex. 2, pp. 8, 27.  She hates "pimps" and men who take advantage of women, and

17 when Donneekie first sees her, she is pointing her gun at a cab driver who has tried

18 to overcharge her.  *Id.*, pp. 10-12, 22-23, 29.  Donneekie and Teresa get along

19 immediately, and they eventually marry.  *Id.* at 23-25, 68.

20      Donneekie, now a drug kingpin, starts dealing heroin.  RJN Ex. 2, p. 29.  As

21 an investment, he buys a recording studio to be managed by a high school friend;

22 the studio has just entered a deal to distribute music in London.  *Id.*, pp. 30-32.

23      Gunmen working for a rival drug dealer named Big Red rob one of

24 Donneekie's "dope spots" and kill his friend.  RJN Ex. 2, pp. 32-33, 40-42.

25 Meanwhile, Donneekie, who has enrolled in college, impresses professors with his

26 opinions about government corruption.  *Id.*, pp. 35-37, 50-53.  He also impresses

27  

---

[4] Page numbers refer to the page numbers of the screenplay. Page 34 of the
screenplay is missing from the copy registered with the U.S. Copyright Office.

28  

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Suany Brooks, a "gorgeous WHITE GIRL," who shares his views and asks him out. *Id.*, pp. 18-19, 38-39. When Donneekie learns that his friend has been killed, he directs his men to put out a reward to find the culprits. *Id.* at pp. 42-43.

Kenroy gets out of prison. RJN Ex. 2, pp. 49-50, 53-55. A Chinese inmate has told Kenroy to go to his son's restaurant and order beef fried tomatoes, which Kenroy does. *Id.*, pp. 40, 55. The son, Johnny Chin, offers to supply Kenroy with "china white" heroin. *Id.*, pp. 56-57. Kenroy reunites with Donneekie when the latter shoots down another gunman trying to rob his dope spot. *Id.*, pp. 58-63. Kenroy introduces Donneekie to Johnny, who starts supplying Donneekie. *Id.*, pp. 64-71. Donneekie's old heroin supplier puts a hit on him, but Donneekie's men kill the supplier by blowing up his pizza shop. *Id.*, pp. 71-75.

Kenroy overhears Donneekie and Johnny talking about a major sale to take place at South Street Seaport. RJN Ex. 2, pp. 76-77. Kenroy then gets arrested while he is in possession of cocaine. He is interrogated and tells police about the sale. *Id.*, pp. 77-79, 80. Meanwhile, Donneekie has sex with Suany and takes her out to the movies. *Id.*, pp. 79-80. Big Red's men try to kill Donneekie in the theater bathroom, but Donneekie kills them instead. *Id.*, pp. 80-82.

When the police intercept the sale at South Street Seaport, Donneekie and Johnny figure out that Kenroy must have snitched. RJN Ex. 2, pp. 82-84. Donneekie tells Suany that he wants her to take over the "account position for the distribution of records," and that he will have the woman who used to have that job, Twanda, handle just the "accounts for the studio." *Id.*, p. 90.

Pressured by DEA agents, Kenroy tells them that he heard that a guy called "the Don" was buying heroin. RJN Ex. 2, pp. 90-91. One of Donneekie's men finds Kenroy, and Donneekie and Johnny confront him. Johnny uses a torture gadget to break Kenroy's fingers, and Donneekie cuts off his testicles. *Id.*, pp. 97-105. An angry Twanda tells Teresa to come to the studio when Suany is there with Donneekie. Teresa and Suany then find out about each other. *Id.*, pp. 106-10.

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

Donneekie discovers that Big Red was responsible for robbing him and killing his friend, and violently kills Big Red and his nephew.  RJN Ex. 2, pp. 110-14, 115-21.  DEA agents inform Kenroy's mother of her son's death; she mentions that Kenroy's only friend was Donneekie, and the agents begin suspecting that Donneekie is "the Don."  *Id.*, pp. 114-15.  Donneekie and Teresa manage to elude the DEA agents.  *Id.*, pp. 122-26.  Donneekie reveals his true identity to Suany and says goodbye.  *Id.*, pp. 126-27.  The screenplay ends happily, with Donneekie and Teresa flying to London to run the music distribution there, and Suany learning that Donneekie has given her the studio and his luxury apartment.  *Id.*, pp. 127-30.

## III.   RULE 12(B)(6) STANDARDS IN COPYRIGHT CASES

Although a court must accept the facts pled as true and draw all reasonable inferences in favor of a plaintiff on a motion to dismiss, it "need not accept as true . . . allegations that contradict facts that may be judicially noticed by the court."  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  The court should "read[] the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context."  *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1145 (C.D. Cal. 2008).

To state a claim for copyright infringement, the plaintiff must plead facts plausibly showing (1) his ownership of a valid copyright[5]; (2) that the creators of the defendant's work had access to his work; and (3) substantial similarity in protected expression between the two works.  *See Berkic v. Crichton*, 761 F.2d 1289, 1291 (9th Cir. 1985); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 826 (C.D. Cal. 2010) (plaintiff must show access by "*the creators of the infringing work*"), *aff'd*, 438 Fed. Appx. 587 (9th Cir. 2011).

When considering a motion to dismiss an infringement claim for lack of

---

[5] According to the *CYCO* copyright registration, Greta Clarke—not Plaintiff—is the copyright owner.  *See* RJN Ex. 3.  However, for purposes of this Motion only, Defendant Allen does not challenge Plaintiff's purported ownership of a valid copyright in *CYCO*.

substantial similarity, a court may "take judicial notice of generic elements of creative works" as well as "documents [such as copies of works] which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'" *Zella v. The E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007) (citation omitted). *See, e.g.*, *Newt*, 2016 WL 4059691, at *2-3 (taking judicial notice of *Empire* and the deposit copies of plaintiff's works); *Astor-White*, 2016 WL 1254221, at *2 n.1 (same); *Gadh v. Spiegel*, 2014 WL 1778950, at *3 n.2 (C.D. Cal. Apr. 2, 2014) (Walter, J.) (taking judicial notice of the plaintiffs' script and the defendant's film).

Courts routinely grant motions to dismiss copyright infringement claims where it is apparent from the works that they are not substantially similar as a matter of law. *See Christianson v. West Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *Gadh*, 2014 WL 1778950, at *3 n.2 ("For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss).") (citing numerous cases).[6] This approach is consistent with *Twombly's* holding that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[6] *See also, e.g., Wild v. NBC Universal, Inc.*, 513 Fed. Appx. 640, 641 (9th Cir. 2013) (affirming where "district court took judicial notice of the two works and dismissed the complaint without leave to amend based on a lack of substantial similarity in their protectable elements"); *Van v. Cameron*, 566 Fed. Appx. 615, 615 (9th Cir. 2014); *DuckHole Inc. v. NBC Universal Media*, 2013 WL 5797279, at *7 (C.D. Cal. Sept. 6, 2013); *Schkeiban v. Cameron*, 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012), *aff'd*, 566 Fed. Appx. 616 (9th Cir. 2014); *Campbell v. The Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010); *Capcom Co., Ltd, v. The MKR Group, Inc.*, 2008 WL 4661479, at *4-5 (N.D. Cal. Oct. 10, 2008); *Thomas v. The Walt Disney Co.*, 2008 WL 425647, at *1 (N.D. Cal. Feb. 14, 2008), *aff'd*, 337 Fed. Appx. 694 (9th Cir. 2009).

## IV.   PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM FAILS

### A.   <u>Plaintiff Has Failed To Plead Access</u>

Plaintiff's infringement claim fails because he has failed to plead facts that plausibly show that the creators of *Empire*, Lee Daniels and Danny Strong, had reasonable access to *CYCO*.  A "bare possibility" of access or "mere speculation or conjecture" is legally insufficient. *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *Gable*, 727 F. Supp. 2d at 824 (citing *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003)).  Access by the creator of the defendant's work through an intermediary who received the plaintiff's work may only be inferred if the intermediary was "in a position to transmit it to the copier," such as "a supervisor with responsibility for the defendant's project, [or a person who] was part of the same work unit as the copier, or contributed creative ideas or material to the defendant's work." *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355-56 (C.D. Cal. 1984).  In addition, "'the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter . . . .'" *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016).  Furthermore, the facts pled must show access by the defendant creator "*before* the creation of" the defendant's work. *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043, 1054 (C.D. Cal. 2000).

Here, Plaintiff merely alleges that he sent *CYCO* to another inmate, who allegedly sent it to Allen fifteen years ago.  Plaintiff's bare speculation that Daniels and Strong had access to *CYCO* before creating *Empire* because Allen later directed the final episode is insufficient. *See, e.g.*, *Schkeiban v. Cameron*, 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012) (plaintiff failed to plead that defendant creator, Cameron, had access to his script via actor Billy Zane because "the facts concerning how Mr. Zane delivered the script to Mr. Cameron and why Mr. Cameron would read anything from Mr. Zane are vague").

1    **B.      _Empire_ and _CYCO_ Are Not Substantially Similar**

2        Plaintiff's infringement claim also fails because there is a complete lack of

3    substantial similarity between the works in any protected expression.  To prove

4    substantial similarity, a plaintiff must satisfy both an "extrinsic" test and an

5    "intrinsic" test.  _Funky Films, Inc. v. Time Warner Entm't, Inc._, 462 F.3d 1072,

6    1077 (9th Cir. 2006).  On a motion to dismiss, only the extrinsic test is relevant.

7    _Zella_, 529 F. Supp. 2d at 1133 n. 8.  The extrinsic test requires "analytic

8    dissection" of the works, and focuses on "specific, concrete elements" of

9    expression rather than generalizations.  _Bissoon-Dath v. Sony Comp. Entm't Am.,_

10   _Inc.,_ 694 F. Supp. 2d 1071, 1079 (N.D. Cal. 2010), _aff'd and adopted by_, 653 F.3d

11   898 (9th Cir. 2011) (published without opinion).  The plaintiff must identify

12   "articulable similarities between the plot, themes, dialogue, mood, setting, pace,

13   characters, and sequence of events" of the two works.  _Kouf v. Walt Disney_

14   _Pictures & Television,_ 16 F.3d 1042, 1044 (9th Cir. 1994).

15       In applying the extrinsic test, the court must first "filter out and disregard the

16   non-protectable elements [of each work] in making [a] substantial similarity

17   determination."  _Cavalier v. Random House, Inc.,_ 297 F.3d 815, 822 (9th Cir.

18   2002).  Facts and ideas must be filtered out because "no author may copyright facts

19   or ideas."  _Harper & Row Publrs., Inc. v. Nation Enters._, 471 U.S. 539, 547

20   (1985).  In addition, "scenes à faire, which flow naturally from generic plot-lines,

21   are not protectable."  _Funky Films_, 462 F.3d at 1077.  The court "must take care to

22   inquire only whether 'the _protectable elements_, _standing alone_, are substantially

23   similar.'"  _Id._ (quoting _Cavalier_, 297 F.3d at 822) (emphasis in original).

24       Here, Plaintiff's claim fails an analysis of each element of the extrinsic test.

25       **Plot.**  A court will "look[] beyond the vague, abstracted idea of a general

26   plot" when assessing similarities.  _Berkic_, 761 F.2d at 1293.  Thus, even if two

27   works "share the same basic plot premise" (which is not the case here), that is

28   nonetheless insufficient to establish substantial similarity if "a closer inspection

1   reveals that they tell very different stories." *Benay v. Warner Bros. Entm't, Inc.*,

2   607 F.3d 620, 625 (9th Cir. 2010).

3          Even at the most abstract, unprotectable level, the plots of the two works

4   here are not similar. *Empire* is a modern take on the *King Lear* succession story

5   set in the context of a music empire.[7] *Empire* "focuses on the family dynamics and

6   conflict" amongst the Lyon family in their battle for control of the music empire.

7   *Newt*, 2016 WL 4059691, at *4. In contrast, *CYCO* is a story about a drug kingpin.

8   He meets two love interests and takes revenge on a former ally who "snitches" on

9   him to the police and a rival drug dealer who killed his friend. With law

10  enforcement after him, he is forced to try living a legitimate life but as a fugitive.

11         Plaintiff nevertheless alleges that both works are about a "black male drug

12  dealer and a black gangster girl, making money from drugs and investing into a

13  music studio and record label, to legitimize their life." FAC, ¶¶ 22-23; SAC,

14  ¶¶ 42-43. Even if that characterization were accurate (and it is not), Plaintiff

15  cannot claim ownership of such a general idea. *See, e.g.*, *Cavalier*, 297 F.3d at 824

16  ("basic plot ideas," such as "the general premise of a child, invited by a moon-type

17  character, who takes a journey through the night sky and returns safely to bed to

18  fall asleep," "are not protected by copyright law"); *Newt*, 2016 WL 4059691, at *4

19  ("the basic plot idea of 'pursuing dreams of music careers is not protectable'")

20  (quoting *Merrill v. Paramount Pictures Corp.*, 2005 WL 3955653, at *10 (C.D.

21  Cal. Dec. 19, 2005)); *Thomas*, 2008 WL 425647, at *3 ("basic plot ideas," like the

22  idea of "young fish in the ocean that are captured by divers and put in a fish tank,"

23  are not protectable).

24  _____

25  [7] *See* *Van Horn v. Van Horn*, 393 F. Supp. 2d 730, 734 n. 1 (N.D. Iowa 2005)
    ("*King Lear* recounts the events surrounding the aging King Lear's decision to

26  divvy up his kingdom among his three daughters, Cordelia, Regan and Goneril.
    Looking for his progeny to bask him in love, Lear decides he will bequeath the

27  greatest riches upon whichever daughter makes the most sycophantic incantation
    of devotion and adoration. . . . Much treachery, stabbing, poisoning, and hanging

28  ensue, and the quartet ends up dead by the closing act").

Mitchell
Silberberg &
Knupp LLP

9645627.6

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Furthermore, Plaintiff's allegation mischaracterizes the works. *Empire* is not about Lucious' life dealing drugs or struggling to build a record label; when *Empire* opens, Lucious is already a music mogul. "While *Empire* contains brief flashbacks to Lucious' struggled past (which included drug dealing), *Empire* focuses on family dynamics and conflict among Lucious' three adult sons competing to take over Lucious' music company because Lucious believes he is suffering from Amyotrophic Lateral Sclerosis ('ALS')." *Newt*, 2016 WL 4059691, at *4. Moreover, Lucious was never a kingpin who made millions from drugs; he was poor and sold drugs to feed himself and make music. He then parlayed his music career into an entertainment empire. RJN Ex. 1, Ep. 1 (Pilot), 5:33-6:43, 39:49-40:47. In *CYCO*, Donneekie is a drug lord for nearly all of the screenplay. He is barely involved with the studio, nor does he cross over into "legitimate" life when he buys it as an investment. RJN Ex. 2, p. 32. Rather, he continues to build up his drug operations and only leaves that life when agents come after him. *See id.*, p. 125. *See Merrill*, 2005 WL 3955653, at *10 (work that ended hinting at a character's future success as a singer not substantially similar to work whose character's successful music career made up a substantial portion of story).

Plaintiff also alleges that the works are similar because "[t]he success of the record company in CYCO was left in the hands of a white girl, the male star 'The Don' met in college, and the black gangster girl would run a different part of the company over seas, when the Don was going away," and "[t]he successful record company EMP[IRE] was left in the hands of a white girl (by put [sic] controlling stocks in her name) the star's son met in college, with the black gangster girl, and a pseudo white girl (who is black) nick named 'boo boo Kitty'; that ran the company at the end of the first season of EMP(IRE), when the black male star went away." FAC, ¶¶ 39-40; SAC, ¶¶ 59-60. The idea of transferring ownership of a music-related company is a basic plot idea that is unprotectable. The allegation is also inaccurate: In *Empire*, Lucious does not give controlling stock of Empire to

1    Andre's wife Rhonda, to Cookie, or to Anika ("Boo Boo Kitty").  *See* RJN Ex. 1,

2    Ep. 10 (Sins of the Father), 28:27-30:07.  In fact, Anika leaves Empire for a rival

3    music company, and Lucious picks his son Jamal as his successor.  RJN Ex. 1, Ep.

4    9 (Unto the Breach), 0:43-5:34; Ep. 11/12 (Finale), 43:46-47:23.  And Lucious

5    does not escape the law, but is arrested.  *Id.*, Ep. 11/12 (Finale), 1:20:46-1:21:23.

6         There is no substantial similarity in plot.  Indeed, the Ninth Circuit has found

7    plots with far more similarities to lack substantial similarity as a matter of law.

8    *See, e.g.*, *Benay*, 607 F.3d at 625 (two works about American war veterans who

9    traveled to Japan to train the Japanese army only to fall in with samurai rebels not

10   substantially similar); *Funky Films*, 462 F.3d at 1077-78, 1081 (two works in

11   which fathers who operate family-run funeral homes die, resulting in the

12   subsequent operation of the homes by two sons, one of whom has been estranged

13   from the family prior to the father's death); *Berkic*, 761 F.2d at 1293 (two works

14   that "deal with criminal organizations that murder healthy young people, then

15   remove and sell their vital organs to wealthy people in need of organ transplants").

16        **Characters.**  Only "characters who are especially distinctive" are

17   protectable.  *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988).

18   Character traits that "flow naturally from [two] works' shared premises" are not

19   protected, *Benay*, 607 F.3d at 626, and courts must be careful "to slice or filter out"

20   mere embodiments of stock ideas, *Bissoon-Dath*, 694 F. Supp. 2d at 1088.

21        Plaintiff compares *Empire*'s Lucious Lyon with *CYCO*'s Donneekie Brown,

22   but they are substantially different, even in their broad outlines.  Lucious is middle-

23   aged, with an ex-wife and three grown children.  He is a recording artist-turned-

24   business magnate.  Donneekie is in his twenties and has a wife and no children.

25   He is a robber-turned-drug kingpin, and he is not a musician or the head of a large

26   corporation.  "The allegation that both characters are African-American men who

27   rise from poverty and lives of crime to become successful is too general to show

28   substantial similarity."  *Tanksley*, 259 F. Supp. 3d at 291.

1    Nor are *Empire*'s Cookie Lyon and *CYCO*'s Teresa remotely similar.
2  Cookie is a skilled music producer and manager, and she makes Jamal into a star.
3  She used to be married to Lucious and spent seventeen years in prison.  RJN Ex. 1,
4  Ep. 1 (Pilot), 14:04-17:19.  In contrast, Teresa is not musically talented; she is a
5  former prostitute who helps run Donneekie's drug business.  She is still married to
6  Donneekie in the end and never goes to prison.  That a character has sold drugs at
7  some point in life is not protectable.  *See Benjamin v. Walt Disney Co.*, 2007 WL
8  1655783, at *6 (C.D. Cal. June 5, 2007) (rejecting infringement claim where both
9  works allegedly featured "attractive, likable, 30-year-old females that have escaped
10  their humble past to pursue their dreams of working and living in the big city").

11    *Empire*'s Anika Calhoun and *CYCO*'s Suany Brooks share no protectable
12  similarity, either.  Anika is an African-American woman; as the head of A&R of
13  Empire, she works with famous recording artists.  She gets engaged to Lucious, but
14  ultimately leaves him and goes to a rival music company.  RJN Ex. 1, Ep. 1 (Pilot),
15  16:25-17:19, Ep. 9 (Unto the Breach), 0:43-5:34.  Suany is a white college student
16  who is attracted to Donneekie because of their shared views about government
17  corruption.  RJN Ex. 2, pp. 37-38.  Donneekie puts her in charge of record
18  distribution and then gives her ownership of the studio.  *Id.*, p. 90.  She never gets
19  engaged to Donneekie and never turns against him.  *See Capcom Co.*, 2008 WL
20  4661479, at *8 (rejecting infringement claim based on "superficial, generic
21  physical similarities of gender, hair color and wardrobe").

22    Furthermore, *Empire* has many characters with no counterparts in *CYCO*,
23  including central characters such as Andre, Jamal, and Hakeem.  Conversely,
24  *CYCO* has many key characters with no counterparts in *Empire*, such as Kenroy,
25  Johnny Chin, and Big Red.  *See Funky Films*, 462 F.3d at 1079 (emphasizing
26  characters from defendant's work who are not present in plaintiff's work); *Benay*,
27  607 F.3d at 627 (same); *Tanksley*, 259 F. Supp. 3d at 292 (absence of *Empire*'s son
28  characters from the plaintiff's work significant).

***Setting.***  The settings of *Empire* and *CYCO* are vastly different.  *Empire* is set in the present day, much of it in the opulent but professional corporate offices of Empire, and glamorous nightclubs and concert venues where musical performances occur.  In contrast, *CYCO* is set in the early nineties, as evident from the fact that the characters use beepers and car phones.  RJN Ex. 2, pp. 27, 85.  Much of *CYCO* takes place in seedy "crack" and "dope" spots, and in college.  A recording studio (where only a few scenes occur in *CYCO*) is an unprotectable *scene à faire* flowing from the plot idea of owning a recording studio.

Courts have repeatedly found no substantial similarity in cases involving far more similar settings.  *See, e.g.*, *Benay*, 607 F.3d at 627 (both works followed Americans from the United States to seat of the Japanese Emperor); *Funky Films*, 462 F.3d at 1080 (both works set "in a contemporary, family-run funeral home"); *Capcom Co.*, 2008 U.S. Dist. LEXIS 83836, at *29 (both works set in "a rural two-story mall with a helipad on top and a gun shop and music playing inside").

***Dialogue.***  "[E]xtended similarity of dialogue [is] needed to support a claim of substantial similarity . . . ."  *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988).  Plaintiff does not allege any similarity in dialogue, and there is none.

***Mood.***  *Empire* is a nighttime soap opera that aired on primetime network television.  The scenes are full of glitz and glamour, and the tone is mostly upbeat and bright, with musical performances as a central elements of each episode.  In contrast, *CYCO* is a dark crime drama, involving numerous beatings and shootings.  It is extremely violent, with scenes involving the use of torture gadgets and severing of genitalia.  The moods of the works are not similar.  *See Newt*, 2016 WL 4059691, at *8 (no similarity because "[a]lthough *Empire* contains some violent scenes, those scenes are not the primary focus of *Empire* and are less graphic than the violent scenes depicted in Plaintiff's works"); *Campbell*, 718 F. Supp. 2d at 1114 (moods not substantially similar where one work contained scenes involving drug dealers and the hero chopping off his own finger while the other had "'happy

Mitchell Silberberg & Knupp LLP

9645627.6

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

1  upbeat overtones'"'); *Bisson-Dath*, 694 F. Supp. 2d at 1083 (moods not

2  substantially similar where "dark and extremely violent" mood pervaded plaintiffs'

3  works and defendant's work only contained "some dark scenes").

4      **Pace.**  The pace of the two works is highly different.  *Empire* "is a television

5  series which spans over a time period of several months in twelve 1-hour long

6  episodes, and takes place in present day with periodic flashbacks into the

7  characters' past."  *Newt*, 2016 WL 4059691, at *9.  *Empire* explores the lives of

8  the numerous main characters in great depth, and each episode covers multiple

9  subplots.  In contrast, *CYCO* is "a 2hr. and 7 minute screenplay."  FAC, ¶ 22; SAC,

10  ¶ 42.  *CYCO* presents a more linear narrative about the life of a drug dealer and

11  spans a period of over a year.  *See Bernal v. Paradigm Talent & Literary Agency*,

12  788 F. Supp. 2d 1043, 1070 (C.D. Cal. 2010) (works not substantially similar in

13  pace where one was "paced as a feature film" whereas the other work was "paced

14  as [a] television series with multiple hour-long episodes").

15      **Sequence of Events**.  Plaintiff does not allege that the works have similar

16  sequences of events.  Although Plaintiff alleges that the main characters use money

17  from drugs to buy a music studio to legitimize their lives, *Empire* begins long after

18  Lucious has left drug-dealing, and the occasional flashbacks to his drug-dealing

19  only provide backstory.  *See* RJN Ex. 1, Ep. 1, 39:30-40:50.  In *CYCO*, Donneekie

20  is a drug dealer throughout and continues drug-dealing after buying the studio.

21      The FAC and SAC ignore nearly all of the actual events in each work, as

22  well as the actual sequence (or any other details) of those events, which are

23  important to the works' narratives.  The events in *Empire* pertain to the family's

24  conflicts and power struggle over the music empire—none of which appear in

25  *CYCO*.  There is no similarity of sequence of events.  *See Cavalier*, 297 F.3d at

26  823 (sequences of events not substantially similar where events appeared in

27  different contexts, and works did not "share any detailed sequence of events").

28

***Themes.***  The theme of *CYCO* is whether a criminal can cross over into a legitimate life.  Such a stock theme is not protectable.  *See Newt*, 2016 WL 4059691, at *7 ("The concept of a bad person turning his life around . . . is unprotectable.").[8]  And even if it were protectable, that is not the theme of *Empire*, which opens with Lucious as a successful music mogul.  The theme of *Empire* involves the dynamics and conflicts amongst family members battling for control of a music company.  *Newt*, 2016 WL 4059691, at *7.  There is no similarity.

***List of Random Alleged Similarities***.  As the works are not substantially similar in plot, characters, setting, dialogue, mood, pace, sequence of events, or themes, Plaintiff relies on a list of alleged similarities of minor elements, plucked randomly from across the two works.  *See* FAC, Ex. D; SAC, Ex. D.  As the Ninth Circuit has held, however, a "compilation of 'random similarities scattered throughout the works' is 'inherently subjective and unreliable.'"  *Cavalier*, 297 F.3d at 825 (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)); *see Gable*, 727 F. Supp. 2d at 841 ("minor elements, scattered throughout the works, are not probative of similarity").

Many of the alleged similarities are repeats of the ones already addressed, which mischaracterize the works.  Other purported similarities in Plaintiff's list are likewise inaccurate or are abstracted to the level of generalities, so as to concoct similarities that do not exist:

- Plaintiff alleges that "Donneekie is on the floor at end about to be murdered, his love interest (a woman) saves him by killing the man," and in *Empire*,

---

[8]  *See Tanksley*, 259 F. Supp. 3d at 293 ("The idea of an African-American male who rises up from a disadvantaged or criminal past to achieve success through music is nothing new to storytelling, nor is it a protectable element of Plaintiff's work.  It is a compelling theme which has played out both in real life and which has been prominent in many forms of artistic expression.  Hip-hop moguls such as Jay-z, Dr. Dre, and Sean ('Diddy') Combs are living examples of this remarkable story.  Rappers like Tupac Shakur, Snoop Dogg, Master P, and Kanye West have written prolific rhymes about this very idea.  Movies such as *Hustle & Flow* and *Get Rich or Die Tryin'* depict hip-hop artists struggling to break out. . . .").

"Black guy laying on the floor about to be murdered, his love interest (a woman) saves him by killing a man."  FAC, SAC, Ex. D. at 1.  In *CYCO*, Donneekie's crew attacks Big Red's crew.  Donneekie is shot, and one of Big Red's men is about to shoot him when Teresa shoots the man.  RJN Ex. 2, pp. 117-19.  In *Empire*, Andre (not Lucious) gets into a physical brawl with Vernon, a close family friend.  They are not in a mob fight, and Vernon does not intend to kill Andre.  Rhonda does not intend to kill Vernon and does not shoot him; she accidentally kills Vernon by hitting his head with a candlestick.  *See* RJN Ex. 1, Ep. 11/12 (Finale), 1:13:05-1:15:18.

- Plaintiff alleges that Donneekie is found out by police because a lady pronounces his name Don-nee-kie, and in *Empire*, Lucious is found out by police when a crazy bum pronounces his name L-i-o-n.  FAC, SAC, Ex. D at 1.  In *CYCO*, Kenroy's mother is not a witness and simply mentions to police that Kenroy's only friend was Donneekie.  RJN Ex. 2, p. 115.  In *Empire*, the mentally ill homeless man witnessed Lucious kill Bunkie.  He recites Bible verses relating to lions, and then identifies Lucious as the killer from a photo that the detective shows him.  RJN Ex. 1, Ep. 3 (The Devil Quotes Scripture), 28:59-30:16.

- Plaintiff alleges that in both works, the main character kills a longtime buddy who snitches or threatens to snitch to the police.  FAC, SAC, Ex. D at 1.  In fact, in *CYCO*, Kenroy is arrested and interrogated by police, and snitches about a future drug sale.  RJN Ex. 2, p. 80.  In *Empire*, Bunkie is not in police custody and does not snitch to the police.  Rather, Bunkie pressures Lucious to give him $3 million, by pulling a gun on Lucious and telling Lucious that he was a murderer too.  RJN Ex. 1, Ep. 1 (Pilot), 36:40-37:46.

Moreover, even if the allegations of similarities were accurate, these are all unprotected stock elements.  Likewise, the remaining alleged similarities are nothing more than generic ideas and *scenes à faire*, such as a character being

1    abused or the police wanting a person to be an informant, which are expressed very

2    differently in the two works.

3         In sum, the works at issue are not substantially similar as a matter of law.

4    **V.    PLAINTIFF'S CLAIM IN THE SAC FOR DECLARATORY**

5    **JUDGMENT OF CREDIT FAILS AS A MATTER OF LAW**

6         For the same reasons, Plaintiff's claim in the SAC for "declaratory judgment

7    of credit as a Co-creator of television series 'Empire' . . ." also fails.  SAC, p. 5.

8    Plaintiff alleges that Allen "surreptitiously" produced *CYCO* into *Empire* without

9    his permission, and thereby was an infringer.  *Id.*  Because Plaintiff cannot state a

10   claim for infringement, he cannot state a claim for credit on that basis.

11        To the extent that Plaintiff claims that he is the co-author of *Empire*, such a

12   claim also fails as a matter of law.  As an initial matter, "[a] 'joint work' in [the

13   Ninth Circuit] 'requires each author to make an independently copyrightable

14   contribution to the disputed work."  *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231

15   (9th Cir. 2000) (analyzing whether plaintiff made copyrightable contributions that

16   actually appeared in alleged joint work); *see Jarecki v. Ohoven*, 2011 WL

17   13220745, at *4 (C.D. Cal. Aug. 18, 2011) ("if [the claimed co-author] provided

18   only ideas, and not any expressions of ideas, he did not make 'independently

19   copyrightable' contributions that could entitle him to co-author status.").  Plaintiff

20   cannot satisfy this requirement because his alleged similarities consist of

21   unprotected ideas and *Empire* did not copy *CYCO*'s copyrightable expression.

22        Second, to be a co-author, the plaintiff must have "superintend[ed] the whole

23   work," acting as a "master mind" with "creative control."  *Aalmuhammed,* 202

24   F.3d at 1232-34.  As Plaintiff acknowledges, *Empire* was created without his

25   knowledge and he had no control whatsoever over it.  *See* SAC, p. 5.

26        Third, Plaintiff's allegations show that the "putative coauthors" did *not* make

27   "objective manifestations of a shared intent to be coauthors . . . ."  *Aalmuhammed*,

28   202 F.3d at 1234.  Plaintiff does not allege that Greta Clarke, the author of *CYCO*,

Mitchell
Silberberg &
Knupp LLP

9645627.6

23

ever intended *CYCO* to be merged with other contributions to create *Empire* or any joint work.[9]  Plaintiff himself did not have such an intent because he alleges that Allen produced *CYCO* into *Empire* "surreptitiously" without his permission.  SAC, p. 5.[10]  And Plaintiff does not, and cannot, allege facts showing that Twentieth Century Fox Film Corporation ("TCFFC"), the author of *Empire*, intended to be co-authors with him.  *See* RJN Ex. 5.  Plaintiff's allegation that Fisher purportedly told him in 2004 that Allen "suggested a few things from the [*CYCO*] script may need changing" (SAC, ¶ 54) does not show that TCFFC or any other defendant intended for Plaintiff to be a co-author of another work, *Empire*, more than a decade later.[11]

        For all of these reasons, the SAC fails to state a claim that Plaintiff is the co-author of *Empire*.  *See Ford v. Ray*, 130 F. Supp. 3d 1358, 1363 (W.D. Wash. 2015) (dismissing declaratory judgment claim of joint authorship pursuant to Rule 12(b)(6) where allegations showed that "it was defendant who possessed and exercised control over the final product" and plaintiff failed to allege facts "showing a mutual intent to be co-authors"); *Taylor v. Universal Music Corp.*, 2014 WL 12607685, at *5 (C.D. Cal. Mar. 10, 2014) (dismissing claim).

## VI.   AMENDMENT WOULD BE FUTILE

        Plaintiff's claims should be dismissed with prejudice because amendment would be futile.  Because the contents of the works cannot be altered by extraneous allegations, where, as here, substantial similarity is absent, courts dismiss with

---

[9] *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer . . . is considered the author for purposes of this title . . .").

[10] Moreover, Plaintiff's allegations establish that he did not allegedly write *CYCO* in 1993 "with the knowledge and intent that" it would be a joint work.  *Seigel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1145 (C.D. Cal. 2007).  Plaintiff's sister copyrighted the work as the sole author, and according to Plaintiff, he only sent *CYCO* to Fisher a decade later, for potential "sale" of the screenplay.  SAC, ¶ 48.

[11] This allegation is also insufficient to make Allen a co-author of *CYCO* because "general comments and feedback" are not independently copyrightable.  *See Jarecki*, 2011 WL 13220745, at *4.

Mitchell
Silberberg &
Knupp LLP

9645627.6

1   prejudice the copyright claim and all derivative claims.  *E.g.*, *Campbell*, 718 F.

2   Supp. 2d at 1116 (lack of substantial similarity is a "defect [that] cannot be cured

3   by amendment"); *Thomas*, 2008 WL 425647, at *6 ("Because [the lack of

4   substantial similarity] is based on the works themselves and not on Plaintiff's

5   pleadings, leave to amend would be futile.").  To the extent that Plaintiff is

6   claiming that he is a co-author of *Empire*, amendment is futile because the absence

7   of substantial similarity establishes that Plaintiff did not make an independently

8   copyrightable contribution to *Empire*, and because his other allegations defeat that

9   claim.  *See Cox v. Reliance Standard Life Ins. Co.*, 2014 WL 896985, at *6 (E.D.

10  Cal. Mar. 6, 2014) (leave to amend improper where plaintiff "cannot cure . . .

11  deficiencies without adding inconsistent allegations").

12  **VII.   CONCLUSION**

13          The Court should dismiss Plaintiff's operative complaint against Defendant

14  Debbie Allen in its entirety, with prejudice.

15
16  DATED: January 24, 2018              MITCHELL SILBERBERG & KNUPP LLP

17

18                                       By: _/s/ Elaine K. Kim_____
                                              Robert H. Rotstein
19                                            Elaine K. Kim
                                              Attorneys for Defendant Debbie Allen
20

21

22

23

24

25

26

27

28